**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard Ryerson BERNARD,**
**Defendant–Appellant.**

**No. 94–50047.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1994.

Decided Feb. 16, 1995.

Amy M. Karlin, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Ronald L. Cheng, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLOYD R. GIBSON,* HUG, and POOLE, Circuit Judges.

HUG, Circuit Judge:

Richard Ryerson Bernard appeals his two-count conviction for being a felon in possession of a firearm and ammunition, both in violation of 18 U.S.C. § 922(g)(1), on the ground that insufficient evidence existed to support a finding of possession in either case. Bernard also contends that the district court erred by running his sentence for the above conviction consecutively to the sentence he was then serving for violating his supervised release conditions from a prior conviction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

Bernard has several prior convictions which prevent him from lawfully possessing firearms or ammunition. In 1991, he was arrested and convicted for being a felon in possession of a firearm. After being released from prison for that conviction, Bernard was placed on supervised release on June 29, 1992. Two weeks later, Bernard tested positively for illegal drug use. Shortly thereafter, Bernard further violated his supervised release conditions by walking away from his community corrections center without authorization. The court issued a bench warrant for his arrest.

In August 1992, Bernard checked himself into the Los Angeles Veteran's Administration hospital for treatment of a leg infection. While at the hospital, Bernard was treated for rectal pain caused by broken pieces of a hacksaw blade and handcuff keys he had inserted in his rectum. Prior to his discharge from the hospital, a nurse discovered a used syringe in his bed that tested positively for heroin. The hospital authorities checked with police and discovered the warrant issued for his arrest. On August 31, 1992, two detectives went into Bernard's room and arrested him pursuant to the warrant. Ten minutes after Bernard and the detectives left the hospital room, another de-

tective, Detective Stockwell, came and searched the room. He found three small bags on the bed identified as Bernard's bed. In one bag, he found personal items and $1000; in another he found shaving items; and in the third he found a nine-millimeter semiautomatic pistol and ammunition.

Following his arrest, Bernard appeared at his supervised release revocation hearing on September 25, 1992. Based on Bernard's walkaway from the corrections center, a positive urine sample, and a failure to appear for a drug test, the district court revoked Bernard's supervised release and sentenced him to 27 months imprisonment.

Bernard was thereafter charged with being a felon in possession of a firearm and ammunition based on the items found in his hospital room. Bernard pled not guilty and proceeded to trial. A jury convicted Bernard on both counts. On January 5, 1994, the court sentenced him to 72 months imprisonment to be served consecutively to the 27 months he was then serving. Bernard timely appeals both his conviction and his sentence.

## II.

■ Bernard moved twice for judgment of acquittal, pursuant to Fed.R.Crim.P. 29., on the ground that the Government failed to establish that he had possession of either the firearm or the ammunition. The district court denied both motions. We conclude that the district court did not err.

■ When reviewing a sufficiency of the evidence claim, we must determine whether any rational trier of fact could have found every essential element of the crime beyond a reasonable doubt. *United States v. Terry*, 911 F.2d 272, 278 (9th Cir.1990). "The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." *Id.* (citation omitted).

■ Bernard maintains that there is no evidence linking him to the firearm and am-

* Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

munition other than his mere presence in the hospital. He relies on well-established authority that mere presence cannot constitute possession. Further, Bernard contends that establishing possession in this case is more difficult for the Government because Bernard shared the hospital room with another patient. *See United States v. Rodriguez,* 761 F.2d 1339, 1341 (9th Cir.1985). However, "[t]he element of possession does not require proof of exclusive actual possession; it may be satisfied by proof of constructive or joint possession." *United States v. Soto,* 779 F.2d 558, 560, *as modified,* 793 F.2d 217 (9th Cir.1986), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987). Because Bernard was not in the hospital room at the time the officers found the firearm and ammunition, the Government must establish that Bernard constructively possessed the items. To prove *constructive possession,* the Government must demonstrate: 1) that Bernard knew of the presence of the firearm and ammunition, and 2) that Bernard had the power to exercise dominion and control over the items. *Rodriguez,* 761 F.2d at 1341. The Government can prove possession by circumstantial evidence. *United States v. Ocampo,* 937 F.2d 485, 489 (9th Cir.1991).

We conclude that this was not a case where it was "purely speculative" that Bernard possessed the items, or that Bernard's "mere presence" in the hospital was the only evidence offered against him. To the contrary, the evidence introduced at trial created a string of circumstantial inferences leading to the rational conclusion that Bernard knew of the items' presence and that he exercised dominion and control over them prior to his arrest.

First, the Government offered evidence that the officers found the items on Bernard's bed, among other personal items, on the day Bernard was to be discharged from the hospital. It is reasonable to infer that Bernard had packed his bags on his bed in anticipation of his upcoming departure and likely would have left the hospital with the items had the officers not stopped him. Additionally, the Government established that no one entered the room during the ten minutes between the time the officers left with Bernard and Detective Stockwell arrived to search the room. After arresting Bernard and leaving the room with him, a detective instructed the nursing staff to not let anyone into the room. A nurse was positioned outside the room thereafter. The detective then called Stockwell, instructing him to come and search "Bernard's belongings," inferring that Bernard had belongings in the room that he had seen. When Stockwell arrived to search the room, he saw nursing staff positioned with an unobstructed view to Bernard's room.

Furthermore, although Bernard contends that the bags were not his, Bernard's roommate testified that the bags were not his own, that he never placed objects on Bernard's bed, and that he never saw objects appear in the room without explanation. We conclude that the evidence in the record was sufficient to support the jury's conclusion that Bernard knew of the items' presence and that he exercised control over them prior to his arrest. The jury had ample circumstantial evidence before it to support a finding of constructive possession. The district court did not err in denying Bernard's motion for acquittal.

## III.

Bernard's second contention is that the district court erred by ordering his sentence to run consecutively to the term he was currently serving for violating his supervised release conditions from a prior conviction. We disagree.

We review the application of the sentencing guidelines to undisputed facts *de novo. United States v. Latimer,* 991 F.2d 1509, 1511 (9th Cir.1993). Absent an ex post facto violation, the sentencing court is to apply the guidelines in effect on the date the defendant is sentenced. *See* 18 U.S.C. § 3553(a)(4). The 1993 version of the guidelines was in effect at the time Bernard was sentenced; however, he contends that the 1991 version, the version in effect on the date of his offense, should be used because application of the amended version resulted in increased punishment.

The 1993 version of the United States Sentencing Guidelines (U.S.S.G.) § 5G1.3 provides:

### Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

U.S.S.G. § 5G1.3 (1993).

The district court made two rulings regarding Bernard's sentence. First, the court concluded that consecutive sentencing was proper under U.S.S.G. § 5G1.3(a); in the alternative, the court concluded that subsection (b) was not applicable to Bernard's situation and that subsection (c) could be relied on as a catchall. Then, construing application note four, the court concluded that consecutive sentences were proper. We affirm Bernard's sentence on the alternative ground.

■ The offense of which Bernard was convicted was not committed while he was serving a "term of imprisonment" as specified in section 5G1.3(a). Instead, it was committed after he had completed his term of imprisonment and while he was completing his term of supervised release. The activi-ties specified in the parenthetical phrase "including work release, furlough or escape" all occur during a term of imprisonment. Supervised release occurs after the term of imprisonment has been completed. Thus, section 5G1.3(a) does not apply to this case.

■ We are then confronted with the question whether the sentence imposed for an offense committed while on supervised release is to be served consecutively to the sentence for the violation of the supervised release. This involves an interpretation of section 5G1.3(b) and (c).

The Sentencing Commission amended section 5G1.3(b) in 1993 in part by adding application note four, which expressly requires a consecutive sentence in this case. Application note four reads:

> If the defendant was on ... supervised release at the time of the instant offense, and has had such ... supervised release revoked, the sentence for the instant offense should be imposed to be served consecutively to the term imposed for the violation of ... supervised release in order to provide an incremental penalty for the violation of ... supervised release (in accord with the policy expressed in §§ 7B1.3 and 7B1.4).

U.S.S.G. § 5G1.3, comment. (n. 4) (1993). It is clear that application note four interprets section 5G1.3(b) and (c) so as to require consecutive sentences in this case. In essence, the interpretation is that section 5G1.3(b) does not apply in these circumstances so as to require concurrent sentences, and thus section 5G1.3(c) does apply and requires consecutive sentences.

Bernard contends, however, that applying the wording of the 1993 version of section 5G1.3(b) and application note four violated the Ex Post Facto Clause. He contends that the 1991 version of section 5G1.3(b) would have been applicable to his situation and would have required concurrent sentences. That section provided:

(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that constituted part of the same course of conduct as the instant offense and have been fully

taken into account in the determination of the offense level for the instant offense, or if the prior undischarged term of imprisonment resulted from a federal offense and was imposed pursuant to the Sentencing Reform Act, the sentence for the instant offense shall be imposed to result in a combined sentence equal to the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all the sentences been imposed at the same time.

U.S.S.G. § 5G1.3(b) (1991).

We conclude that the 1991 version of section 5G1.3(b) did not apply to Bernard's factual situation. First, Bernard's supervised release was revoked because he violated the conditions of his release by walking away from his community corrections center, by testing positively for drugs, and by failing to appear at a drug test. Therefore, his undischarged term of imprisonment did not result "from offense(s) that constituted part of the same course of conduct as the instant offense." See U.S.S.G. § 5G1.3(b) (1991). Nor did Bernard's prior undischarged term of imprisonment result from a federal offense imposed pursuant to the Sentencing Reform Act. It resulted from violations of the conditions of supervised release. The 1991 version of section 5G1.3(b) on its face did not apply Bernard's situation. Therefore, even under the 1991 version of the guidelines, section 5G1.3(b) would not be applicable to require concurrent sentences, and thus, section 5G1.3(c), which is virtually the same in the 1991 and 1993 versions, would have required consecutive sentences.

Construing the 1993 application note four to apply to this case does not violate the Ex Post Facto Clause. It merely makes explicit what was otherwise implicit in the operation of section 5G1.3(b) and (c). In order to "achieve reasonable incremental punishment" for an offense committed while on supervised release, the sentence for the supervised re-

lease violation and the sentence for the instant offense are to be served consecutively.

The Eighth and Eleventh Circuits have concluded that a pre–1993 version of section 5G1.3 required consecutive sentences when the defendant was sentenced first for a supervised release violation and second for a federal offense. This is precisely what happened in Bernard's case and this is the interpretation confirmed in application note four.

In *United States v. Glasener,* 981 F.2d 973 (8th Cir.1992), the defendant argued that the court failed to apply section 5G1.3(b) to his case. The court noted that had he been sentenced in the reverse order, that is, first for his instant offense and second for his supervised release violation, then U.S.S.G. § 7B1.3(f) [1] would mandate consecutive sentences. *Id.* at 974. The court held that the timing and order of sentencing should not control the outcome of his case. *Id.* at 975. By imposing the sentences in the opposite order, the court properly could have ordered consecutive sentences; thus, the same result should occur if the court sentences the defendant first for the supervised release violation. *See Id.* at 975–76. *See also United States v. Flowers,* 13 F.3d 395 (11th Cir.1994). We agree with this analysis, and hold that application note four merely confirms a sound prior interpretation of section 5G1.3. Thus, its application in this case does not violate the Ex Post Facto Clause.

## IV.

We affirm the conviction and hold that the district court properly applied U.S.S.G. § 5G1.3 in imposing consecutive sentences.

**AFFIRMED.**

---

1. Section 7B1.3(f) provides:

Any term of imprisonment imposed upon the revocation of … supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is

serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of … supervised release.

U.S.S.G. § 7B1.3(f) (1993).