87 F.3d 1324
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven HILT, Defendant-Appellant.
 No. 95-30235.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 8, 1996.*
Decided June 4, 1996.
 
 Before: LAY,** CHOY, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Steven Hilt appeals his conviction for one count of conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. § 846, one count of conspiracy to launder money in violation of 18 U.S.C. § 1956, four substantive money laundering counts in violation of 18 U.S.C. § 1956, and one count of using a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Hilt argues that sufficient evidence does not support any of his convictions. Hilt withdraws his double jeopardy argument in his reply brief. We affirm.
 
 Analysis
 
 3
 I. Sufficient evidence supports Hilt's conspiracy and money laundering convictions.
 
 
 4
 Sufficient evidence supports a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 5
 A. Conspiracy to distribute cocaine and marijuana.
 
 
 6
 To establish a violation of 21 U.S.C. § 846 the government must prove (1) an agreement to accomplish an illegal objective, and (2) the requisite intent necessary to commit the underlying substantive offense. United States v. Mesa-Farias, 53 F.3d 258, 260 (9th Cir.1995).
 
 
 7
 The testimony of Julio Sanchez-Concha provided sufficient evidence to convict Hilt of conspiracy to distribute cocaine and marijuana. Sanchez-Concha was Hilt's supplier of drugs. Sanchez-Concha testified that Hilt agreed to distribute drugs with him. Moreover, Sanchez-Concha testified that he delivered cocaine and marijuana to Hilt and that Hilt then sold these drugs to other individuals. From this testimony, the jury could have found that Hilt and Sanchez-Concha agreed and intended to distribute cocaine and marijuana.
 
 
 8
 B. The four substantive money laundering convictions.
 
 
 9
 Hilt argues that the four substantive money laundering convictions in violation of 18 U.S.C. § 1956(a)(1) are not supported by sufficient evidence. These crimes were charged in counts 24 through 27. Specifically, Hilt argues that the evidence was insufficient to convict on all four counts because the government did not establish that he sent and received the wire transfers "with the intent to promote the carrying on of the crime of illegal distribution of a controlled substance." Appellant's Opening Brief at 26.
 
 
 10
 1. Count 24.
 
 
 11
 Count 24 was based on a $3,350.00 wire transfer, dated January 20, 1990, from Bozeman, Montana to San Antonio, Texas. Hilt admitted that he sent this wire transfer. Sanchez-Concha testified that this wire transfer was for the payment of drugs that he supplied to Hilt. Moreover, Sanchez-Concha testified that he took the proceeds from the wire transfers and invested them in future shipments of drugs. Sanchez-Concha further stated that he and Hilt discussed that the proceeds from the wire transfers were reinvested in future drug shipments.
 
 
 12
 This evidence was sufficient to establish that Hilt intended to promote the carrying on of the illegal distribution of narcotics. Hilt's admission that he wired the money to San Antonio and Sanchez-Concha's testimony regarding Hilt's knowledge that the funds were reinvested in future drug shipments would allow a reasonable jury to infer Hilt's intent.
 
 
 13
 2. Counts 25 through 27.
 
 
 14
 Counts 25 through 27 were based on three wire transfers from Bozeman, Montana to San Antonio, Texas. Hal Holmquist testified that he wired this money to Hilt to pay for one ounce of cocaine that Hilt sold to him. Sanchez-Concha testified that Hilt subsequently delivered this money to him. This evidence, in conjunction with Sanchez-Concha's testimony that the wire-transfer proceeds were reinvested in future drug shipments and that Hilt knew of this arrangement, was sufficient to establish that Hilt intended to promote the carrying on of the distribution of illegal narcotics.
 
 
 15
 C. Conspiracy to launder money.
 
 
 16
 To establish a conspiracy to violate 18 U.S.C. § 1956 the government must prove: (1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive offense. United States v. Nelson, 66 F.3d 1036, 1044 (9th Cir.1995).
 
 
 17
 The testimony of Sanchez-Concha provided sufficient evidence to convict Hilt for conspiracy to launder money. Sanchez-Concha testified that he and Hilt agreed to wire money to San Antonio. Sanchez-Concha also testified that government exhibits 1 to 144 represented wire-transfer proceeds that Hilt and others sent to San Antonio. Moreover, Sanchez-Concha testified that these proceeds were reinvested in future drug shipments and that Hilt knew of this arrangement. From this evidence, the jury could have found all elements of the conspiracy beyond a reasonable doubt.
 
 
 18
 II. Sufficient evidence supports Hilt's conviction for using a firearm during a drug trafficking crime.
 
 
 19
 The indictment charged that Hilt "did knowingly use a firearm during and in relation to a drug trafficking crime, wit: attempted possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 846, all in violation of 18 U.S.C. § 924(c)(1)." Hilt argues that sufficient evidence does not support the jury's findings that he (1) committed the underlying offense of attempted possession of cocaine with the intent to distribute, or (2) used a firearm during this offense.
 
 
 20
 A. Sufficient evidence supports the jury's finding that Hilt attempted to possess cocaine with the intent to distribute.
 
 
 21
 "The elements of attempt to possess cocaine with intent to distribute are: (1) an intent to engage in criminal conduct, coupled with (2) an overt act constituting a substantial step toward the commission of the crime." United States v. Davis, 960 F.2d 820, 826-27 (9th Cir.), cert. denied, 506 U.S. 873 (1992).
 
 
 22
 The testimony of Martin Garza and Ron Batters provided sufficient evidence to establish that Hilt attempted to possess cocaine with the intent to distribute. Garza testified that in July of 1992, he transported approximately three ounces of cocaine to Montana for Sanchez-Concha. Garza stated that after arriving in Montana he was taken to Hilt's trailer home. Hilt called several friends to inform them that Garza had arrived and these friends subsequently arrived at Hilt's trailer. At first, Garza sold the cocaine directly to Hilt's friends, but Hilt became angry because he was not making money on the transactions. Thereafter, Hilt sold the cocaine directly to his friends, and kept a share of the sale price for himself.
 
 
 23
 Garza testified that the next morning he left Hilt's trailer and rented a motel room. Later that day, Hilt arrived at the motel and knocked on Garza's door. Garza testified that he let Hilt into his motel room and Hilt was accompanied by Virgil Peffer. After entering the motel room, Hilt asked Garza to give him some cocaine, and Garza told Hilt that he could not without first being paid. At this point, Peffer pulled out a gun and Hilt asked: "Are you going to turn me on now?" Garza was then forced at gunpoint to turn over approximately one-half ounce of cocaine. Garza testified that he gave this cocaine to Hilt.
 
 
 24
 Ron Batters testified at trial on behalf of the government. Batters testified that he was at home when Hilt and Peffer returned from Garza's motel room. At this time, Peffer had possession of the cocaine. Peffer placed the cocaine on a table and told those present to help themselves.
 
 
 25
 The testimony of Garza and Batters was sufficient to allow a jury to find that Hilt intended to distribute the cocaine that he obtained in the robbery. Garza testified that prior to this robbery, Hilt had been distributing cocaine at his trailer. This evidence of prior distribution, in conjunction with the evidence of Hilt's robbery of the cocaine, was sufficient to allow a jury to infer the necessary intent. The evidence was also sufficient to allow a jury to find that Hilt took a substantial step toward the completion of the crime of possession with intent to distribute. Garza's testimony of Hilt's involvement in the robbery provided ample evidence to establish this element.
 
 
 26
 B. Sufficient evidence supports the jury's finding that Hilt used a firearm during a drug trafficking crime.
 
 
 27
 18 U.S.C. § 924(c)(1) provides in part: "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years."
 
 
 28
 The United States Supreme Court defined the term "use" in Bailey v. United States, 116 S.Ct. 501 (1995). The Court held
 
 
 29
 that § 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense.
 
 
 30
 Id. at 505. To illustate activities that fall within this definition, the court wrote:
 
 
 31
 The active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use."
 
 
 32
 Id. at 508 (emphasis added).
 
 
 33
 Sufficient evidence supports Hilt's "use" of the firearm. As noted above, an offender can use a firearm by making "reference to a firearm in his possession ... calculated to bring about a change in the circumstances of the predicate offense." Garza testified that after Peffer brandished the firearm, Hilt asked: "Are you going to turn me on now?" The jury could have found that this statement referred to the firearm and was intended to force Garza to turn over the cocaine--a change in the circumstances of the predicate offense.
 
 
 34
 The only other issue is whether the firearm was "possessed" by Hilt. "The element of possession does not require proof of exclusive actual possession; it may be satisfied by proof of constructive or joint possession" United States v. Bernard, 48 F.3d 427, 430 (9th Cir.1995) (quoting United States v. Soto, 779 F.2d 558, 560, amended by, 793 F.2d 217 (9th Cir.1986), cert. denied, 484 U.S. 833 (1987)). To prove constructive possession, the government must establish (1) knowledge of the presence of the firearm, and (2) power to exercise dominion and control. Id. From Hilt's reference to the firearm, the jury could have found that he knew of its presence and was exercising dominion and control over it.[1]
 
 
 35
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sufficient evidence also support Hilt's use of the firearm as an accomplice. 18 U.S.C. § 2(a) provides: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Hilt's reference to the firearm would allow a jury to find that he was aiding Peffer's use of the firearm