

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-2-1996

# USA v. Spiers

Precedential or Non-Precedential:

Docket 95-5335,95-5336

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"USA v. Spiers" (1996). *1996 Decisions.* Paper 166.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/166

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 95-5335 and 95-5336
_____


UNITED STATES OF AMERICA

vs.

PAUL JEROME SPIERS

                    Appellant.


_____


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Criminal No. 93-cr-00400-01)

_____


ARGUED DECEMBER 13, 1995

BEFORE:  ROTH, LEWIS and McKEE, Circuit Judges.

(Filed   May 2, 1996)

_____


Thomas S. Higgins (ARGUED)
Office of Federal Public Defender
972 Broad Street
Newark, NJ  07102

        Attorney for Appellant

Kevin McNulty
Henry E. Klingeman (ARGUED)
Office of United States Attorney
970 Broad Street
Room 502
Newark, NJ  07102

Attorney for Appellee

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

This appeal calls upon us to clarify our recent holding
in United States v. Holifield, 53 F.3d 11 (3d Cir. 1995), in
which we addressed the question of a district court's discretion
to impose a concurrent or consecutive sentence under section
5G1.3(c) of the United States Sentencing Guidelines.  In
Holifield, we held that "although the district court must
calculate the `reasonable incremental punishment' according to
the [sentencing guidelines'] methodology, it need not impose that
penalty.  Id. at 16-17.  Today, we reaffirm that a district court
must determine the Guidelines' suggested "reasonable incremental
punishment" according to the commentary's methodology.  The
imposition of the commentary's suggested penalty, however,
remains within the district court's discretion.  We further hold
that, a court may impose a different penalty or employ a
different method for determining what constitutes a reasonable
incremental punishment as long as it indicates its reasons for
imposing the penalty in such a way as to allow us to see that it

has considered the methodology. In this case, the district court performed the calculations necessary to determine the Guideline's suggested penalty and provided sufficient reasons for imposing a different penalty. The order of the district court, therefore, will be affirmed.

## I.

The facts of this case are undisputed. From 1988 until his arrest in 1991, Paul Spiers embarked upon a veritable one man crime spree through three states.

The offenses at issue began in New Jersey on August 10, 1988, when Spiers approached a teller at a branch of First Fidelity Bank in Newark, New Jersey. Spiers handed the teller a note that read, "Hand me your $100. $50. $20 or your gonna die! right where you <u>stand</u> [sic] Try anything unordinary and your gonna see a real blood bath but you'll be <u>First</u>." (Presentence Report ¶ 10) ("PSR") (emphasis in original). Spiers then told the teller that she would die if she did not follow his instructions. The teller obeyed and Spiers left the bank with a total of $6,800. On May 25, 1989, Spiers entered a Hudson City Savings Bank branch, also in Newark, New Jersey. This time he included a small bullet with the note he slipped the teller. The note read "[p]ass me all your $50 or I am gonna shoot everyone here quick." (PSR ¶ 23). Spiers walked away from this robbery with $1,163.

Spiers then made his way to Pennsylvania, where he robbed the Dauphin Deposit Bank in Harrisburg. This robbery began on the evening of May 2, 1991, when Spiers tested the

3

bank's perimeter security system.  When there was no response, he broke a window, entered the bank and laid in wait until morning. When the first employee entered, Spiers put a gun to her head and commanded her to open the bank's vault.  When she said that she was unable, he made her sit at a desk while training his gun upon her.  He then told her that "[i]f you make a move you can forget it cause I will kill you."  (PSR ¶ 13).  While they waited for other employees to arrive, Spiers questioned her about the bank's alarm system and the contents of the vault.

After the second employee arrived, Spiers grabbed her from behind and placed both employees in the bank's ladies room. The second employee informed him that the alarm would be shut off at 7:30 a.m.  (PSR ¶ 14).  A third employee arrived, and Spiers placed him in the ladies room with the others as well.  When the fourth employee entered and Spiers confronted her, she screamed. Spiers then asked her when the vault would be open; she answered that it would be open at 7:40 a.m.  Since this was inconsistent with the other employee's answer (7:30 a.m.), Spiers stated "I guess we're going to have to play Russian Roulette."  (PSR ¶ 16). He then proceeded to hold his gun to the back of each employee's head asking them when the vault would be open.  They all responded 7:30 a.m.

When 7:30 a.m. arrived, Spiers had the employees shut off the alarm, open the vault, and fill two bags with the money from the vault.  After the bags were filled, he forced the employees into a small bathroom.  When a fifth employee entered, he forced her into the bathroom as well.  Spiers then blocked the

4

door and sprayed the room with mace.  Spiers left the bank with a total of $225,550.

A few months later, October 2, 1991, Spiers was found ransacking a room at the Masters Inn in Little Rock, Arkansas.  Spiers had signed-in under the name "Keith Whitfield."  When a desk clerk asked him to leave, Spiers became angry and began arguing with the clerk.  The security officer, an off-duty police officer, arrived and identified himself.  The officer then ordered Spiers to "put [his] hands up."  In response, Spiers brandished a 9mm semi-automatic pistol.  (PSR Addendum II ¶ 2A).  During the ensuing struggle, Spiers pointed the gun at the clerk as well.  When Spiers eventually overpowered the officer, he cocked the gun and placed it to the officer's chest telling him to back up or he would shoot.  (PSR Addendum II ¶ 2A).  After demanding the officer's gun, he fled.  Later that day, the police found an abandoned 1983 Oldsmobile in a local park.  A search of the car uncovered a 9mm semi-automatic pistol, crack cocaine, and a wallet with identification in the name of Keith Whitfield.

One month later, Arkansas police spotted Spiers driving a 1990 Chevrolet that matched the description of a car stolen in Little Rock.  When they attempted to stop Spiers, a chase ensued.  During the chase, Spiers pulled of the road to hide in an equipment shed.  When police officers attempted to block his exit, Spiers rammed the police officers' vehicle.  The officers then ordered him to desist and surrender.  Spiers once again rammed their vehicle.  The officers then disabled Spiers' vehicle by firing into the tires, and Spiers surrendered.  During his

5

arrest, Spiers identified himself as Keith Whitfield.  (PSR Addendum II ¶ 2B).

While being transported from a county jail to a local hospital for a medical evaluation and treatment, Spiers attempted an escape.  Spiers overpowered his custodial officer in the hallway of the medical facility, and took her service revolver. He then pointed the gun at her demanding the keys to her police car.  When she attempted to stall for time, Spiers fired a shot above her head.  He then searched her and found the keys to his ankle cuffs.  Spiers then ordered her to give him her gun belt, radio, and raincoat, and the officer complied.  (PSR Addendum II ¶ 3A).

Fleeing from the hospital, Spiers encountered a man and woman getting out of a 1967 Ford.  Using the officer's gun, Spiers stole their vehicle and sped away.  He eventually crashed the car and fled on foot.  (PSR Addendum II ¶ 3B).  Spiers then broke into a two-story brick house where he held the occupants of the house, a husband and wife, hostage.  Using the stolen police radio, Spiers told the police that he was actually holding four hostages, and demanded that he be able to speak to a Linda Jackson and a Gerald McNair.  (PSR Addendum II ¶ 3C).  After approximately three hours, Spiers surrendered.

Spiers was subsequently convicted in Arkansas of battery, robbery, escape, theft of property (two counts), burglary, and kidnapping.  (PSR ¶ 63).  He was sentenced to prison for fifty years.  (PSR ¶ 66).  Under this sentence, the

first day Spiers would be eligible for parole is February 1, 2004.

On August 3, 1993, Spiers was indicted in the District of New Jersey on two counts of bank robbery (18 U.S.C. § 2113) for the robberies of First Fidelity and Hudson City Savings Bank. Spiers was then indicted in the Middle District of Pennsylvania on one count of bank robbery (18 U.S.C. § 2113) for the robbery of the Dauphin Deposit Bank. The Pennsylvania indictment was later transferred to New Jersey.

Spiers pleaded guilty to Count One of the New Jersey indictment and Count One of the Pennsylvania indictment. (PSR ¶ 5). Pursuant to the plea agreement, the district court dismissed all other counts.

Spiers' sentencing hearing was adjourned twice to allow the parties and the probation office to submit memoranda on the application of U.S.S.G. § 5G1.3. App. at 37-46, 62-84. After hearing argument, the court initially determined that the sentencing range for the federal crimes alone was 97 to 121 months. The court concluded that pursuant to section 5G1.3, if it were to treat the Arkansas offenses as federal offenses and group them with the federal crimes, the total punishment range under the guideline for both the state and federal offenses would be 135 to 168 months. The court then declined to impose the sentencing guidelines' suggested penalty because the "interests of justice would not be served by following the methodology suggested by the hypothetical guideline range." App. at 154-55. The court found that the calculated range was "permeated with

7

questionable variables . . . ." App. at 137. There were many factors, such as victim impact information and whether Spiers recklessly created substantial risks of death to his victims, which might increase a hypothetical federal sentence. Moreover, Spiers' crimes and behavior were "shocking;" and "[s]ociety deserves to be protected against the behavior that [Spiers] engaged in." App. at 156. Consequently, the court found that Spiers did not "deserve" a concurrent sentence, and ordered him to serve a 110-month federal sentence to run consecutively from the completion of his Arkansas state sentence. App. at 157. This appeal followed.

II.

The district court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Although our review of the construction of the Sentencing Guidelines is plenary, Holifield, 53 F.3d at 13, a district court's decision to impose a consecutive or concurrent sentence is reviewed for abuse of discretion. United States v. Nottingham, 898 F.2d 390, 393 (3d Cir. 1993).

III.

In <u>United States v. Holifield</u>, we stated the under 18 U.S.C. § 3584,[1] a sentencing court has the discretion to order a defendant's sentence to run either concurrently or consecutively to another undischarged term of imprisonment.  53 F.3d at 13. This discretion, however, is "subject to section 5G1.3 of the United States Sentencing Guidelines," <u>id.</u>, including the policy statements and commentary contained in the guidelines which are binding on the federal courts.  <u>See</u>, <u>e.g.</u>, <u>Stinson v. United States</u>, 113 S. Ct. 1913, 1919 (1993) (commentary "must be given `controlling weight unless . . . plainly erroneous or inconsistent'" with the guidelines); <u>Williams v. United States</u>, 503 U.S. 193, 201 (1992) (policy statements serve as "an authoritative guide to the meaning of the applicable Guideline").

Section 5G1.3(c) requires that a defendant's sentence shall be imposed to run consecutively with an undischarged state sentence "to the extent necessary to achieve a reasonable incremental punishment for the instant offense."  U.S.S.G. § 5G1.3(c) (1994).  According to the commentary:

> In some circumstances, such incremental punishment can be achieved by the imposition of a sentence that is concurrent with the remainder of the unexpired term of imprisonment.  In such cases, a consecutive sentence is not required.  To the extent

---

[1]    18 U.S.C. § 3584(a) provides:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . .

> practicable, the court should consider a
> reasonable incremental penalty to be a
> sentence for the instant offense that results
> in a combined sentence of imprisonment that
> approximates the total punishment that would
> have been imposed under § 5G1.2 (Sentencing
> on Multiple Counts of Conviction) had all of
> the offenses been federal offenses for which
> sentences were being imposed at the same
> time.  It is recognized that this
> determination will require an approximation.

U.S.S.G. § 5G1.3 (commentary) (1994) (emphasis added).[2]  The

commentary itself describes this methodology simply as a means

"to assist the court in determining the appropriate

sentence. . . .  Generally, the court may achieve an appropriate

sentence through its determination of an appropriate point within

the applicable guideline range for the instant federal offense

combined with its determination of whether that sentence will run

concurrently or consecutively to the undischarged term of

imprisonment."  Id.

In Holifield, we held that while a district court must

calculate the "reasonable incremental punishment" according to

---

[2]     A question as to which version of the Guidelines -- 1990 or
1994 -- applied was raised before the district court.  In
sentencing Spiers, the district court followed the 1994 version
and our interpretation of that version in Holifield.  The
language used in the 1990 version of § 5G1.3 is even more
permissive than the language found in the 1994 version.  The
commentary provided that "[t]he court may consider imposing a
sentence for the instant offense that results in a combined
sentence that approximate the total punishment that would have
been imposed under § 5G1.2 (Sentencing on Multiple Counts of
Conviction) had all of the offenses been federal offenses for
which sentences were being imposed at the same time."  U.S.S.G.
§ 5G1.3 (commentary) (1990).  See United States v. Redman, 35
F.3d 437, 440-441 (9th Cir. 1994) (discussing the history and
evolution of § 5G1.3).  Since the district court's discretion is
even greater under the 1990 version of the Guidelines, even if
the use of the 1994 version of the Guidelines might have
constituted error, such error would have been harmless.

10

the commentary's methodology, the imposition of that penalty, is within the district court's discretion. 53 F.3d at 16. ("although the district court must calculate the `reasonable incremental punishment' according to the methodology, it need not impose that penalty."). If the court imposes a different penalty or employs a different method for calculating the penalty, it must indicate its reasons for not employing the commentary methodology. Id. at 16-17 ("the court may employ a different method in determining the sentence as long as it indicates its reasons for not employing the commentary method."). As a result, when determining whether a defendant's sentence is to be consecutive or concurrent a district court must calculate section 5G1.3's suggested penalty according to the Guidelines' methodology, and if it abandons that methodology and penalty, the court must state its reasons "in such a way as to allow us to see that it has considered the methodology." Id. at 16 (quoting United States v. Redman, 35 F.3d at 441). We, therefore, recognized that the commentary's suggested penalty is not the exclusive or authoritative definition of what constitutes a reasonable incremental punishment, but merely an example that the district court must consider.

The majority of the circuits that have addressed this issue have also concluded that while a district court must consider the Guidelines' methodology, it need not follow it as long as it states its reasons for not doing so. See, e.g., United States v. Hernandez, 64 F.3d 179, 183 (5th Cir. 1995) ("If the district court chooses not to follow the methodology, it must

11

explain why the calculated sentence would be impracticable in that case or the reasons for using an alternate method."); United States v. Wiley-Dunaway, 40 F.3d 67, 72 (4th Cir. 1994) (remanding so the district court could "consider" § 5G1.3(c), but noting that the court "retains the right to depart from" the methodology); Redman, 35 F.3d at 441 ("True, the court must attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology. If that calculation is not possible or if the court finds that there is a reason not to impose the suggested penalty, it may use another method to determine what sentence it will impose."). As the Second Circuit has stated, "[i]n sum, § 5G1.3(c) does not limit the district court's ultimate discretion under 18 U.S.C. § 3584 to impose concurrent or consecutive sentences. It instead requires consideration of the basic principle that a consecutive sentence should be imposed to the extent that it will result in a reasonable incremental penalty and consideration of the Commission's preferred methodology for calculating such a penalty." United States v. Whiteley, 54 F.3d 85, 90 (2d Cir. 1995).[3] We have joined the majority of circuits that leave the ultimate imposition of a concurrent or consecutive sentence to the sound discretion of the district court.

---

[3] The Second Circuit does not require the court to "employ the [commentary's] multi-count analysis approach or explain why it chose an alternative approach," provided the district court expressly considers § 5G1.3. United States v. Lagatta, 50 F.3d 125, 128 (2d Cir. 1995).

12

The Eighth Circuit is the only circuit to reach a different result. That court has held that if a methodology other than the one set forth in the commentary is used, the district court must conduct a departure analysis under the Sentencing Guidelines. See United States v. Duranseau, 26 F.3d 804, 810-11 (8th Cir. 1994); United States v. Brewer, 23 F.3d 1317, 1321-22 (8th Cir. 1994). However, as the Ninth Circuit noted in Redman, 35 F.3d at 442, the doctrinal basis for that decision is the Eighth Circuit's decision in United States v. Gullickson, 981 F.2d 344, 346-48 (8th Cir. 1992), which was based upon the 1991 version of the Guidelines in which the methodology was mandatory. The subsequent Eighth Circuit cases which have interpreted section 5G1.3(c) as imposing greater limits on a district court's discretion fail to take into account that both before and after the 1991 version of section 5G1.3(c), the commentary's methodology was and is permissive. We, therefore, reject the conclusion that section 5G1.3(c) requires a district court to conduct a departure analysis if it chooses to impose a penalty other than the penalty suggested by the commentary's methodology.

Our decision in Holifield is particularly instructive in this case. The defendant in Holifield had served 17 months out of a 21-month state sentence. The district court concluded that for the federal offense, the Sentencing Guidelines required a sentencing range of 15 to 21 months. The court then determined, pursuant to section 5G1.3, that under U.S.S.G. § 5G1.2 the total sentence for the combined state and federal

13

offenses would have been 24 months. The defendant argued that because the combined offense range was 24 months, section 5G1.3 required the court to sentence him to either a 7-month concurrent term or a 3-month consecutive sentence. The district court disagreed. The court concluded that because the minimum sentence for the federal offense was 15 months, it "could have gone no lower except had I departed and, in fact, I see no circumstances that would have warranted departure nor have any been set forth." Holifield, 53 F.3d at 16. We affirmed, noting that "[a]lthough the defendant did not receive a `combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2,' such a sentence could not have been imposed here without a departure from the guidelines. As we have noted, such a departure is not required under § 5G1.3." Id.

We concluded that even if the court had considered but rejected the application of the methodology, "we would reach the same result" because it listed sufficient reasons for imposing a different penalty. Id. at 16-17. First, the court "went through the methodology step-by-step." Id. at 17. Second, the court listed several factors that "warranted a more severe sentence," including: that the defendant's prior offense had not been fully taken into account in determining the offense level for the instant offense; that most of the victims were elderly and the financial hardship caused by the defendant was probably "irremediable;" and that the defendant's conduct was "`parasitic and outrageous' and he had not shown any remorse for his actions." Id. We thus concluded that "although the district

14

court properly followed the § 5G1.3 methodology, we believe it also listed more than sufficient reasons for departing from that methodology if it had chosen to do so."  Id.

## A.

Spiers does not explicitly question this interpretation of Section 5G1.3.[4]  Instead, Spiers argues that the reasons offered by the district court when it rejected the suggested penalty are inadequate.  We disagree.

In this case, the district court clearly employed the commentary's multi-count analysis.  App. at 125-139.  After employing the methodology, the district court decided not to impose the suggested penalty.  In doing so, the court stated that "I have found that the interest of justice would not be served by following the methodology suggested by the hypothetical guideline range[]," App. 154-55; instead, the court concluded, a sentence of 110 months to run consecutively from the completion of the Arkansas state sentence was a reasonable incremental punishment for Spiers' federal crimes.  App. at 157.  Initially, the court expressed some concern that "many unknown variables continue to

_____

[4]    Rather, counsel for Spiers implicitly challenges our conclusion in Holifield that the decision to impose a consecutive or concurrent sentence remains within a district court's discretion.  At oral argument, Spiers suggested that the commentary's methodology was the only means for determining what constituted a reasonable incremental punishment.  This argument totally ignores the advisory nature of the commentary's policy statement.  The commentary's methodology is meant to aid district courts by suggesting what may be a reasonable incremental punishment.  It does not purport to provide the authoritative and exclusive definition of such a punishment.  Congress left that responsibility to the district courts in the sound exercise of their discretion.  See supra at 9-13.

exist" with the application of the commentary's methodology. App. at 135. The court was concerned that it did not have many of the underlying facts of the state offenses which play an integral role in determining Spiers' sentence. Included in these facts were victim-impact information, the degree of harm caused by Spiers during the various assaults, and the number of people potentially endangered during the various crimes. App. at 135-36. If it had this information, the court expressed a belief that the sentencing range may be even higher, perhaps 151 to 181 months. App. at 137.[5] As a result, the court clearly questioned the reliability of the commentary's methodology.

More importantly, the court determined that a concurrent sentence would be inconsistent with the interests of justice. The district court considered Spiers various offenses a "reign of terror," referring to him as a veritable "menace to society" whose conduct endangered correctional officers, police officers, and "just pure people who try to go about their lives normally, not committing any crimes." App. at 155. In light of this, the district court concluded that Spiers simply did not deserve a concurrent sentence. App. at 157. According to the court, "I've taken a chance on some people in my lifetime as a sentencing judge, your record is so bleak, so bad, that I would

_____

[5] Spiers argues that the court placed undue emphasis on the facts of the underlying state offenses. (Appellant's Br. at 14). This argument fails to appreciate that the commentary's suggested methodology requires the district court to treat a defendant's state offenses as federal offenses in order to determine what the federal sentence would have been under § 5G1.2 had all the offenses been federal offenses. U.S.S.G. § 5G1.3 (commentary).

16

be making a horrible bet . . . . You don't deserve it. I want to be very, very candid and straight: You don't deserve it. No way." App. at 156-57. The district court ultimately concluded that a consecutive sentence would not only protect society from any potential future criminal behavior, App. at 156 ("Society deserves to be protected against the behavior that you've engaged in."), but would also ensure that Spiers was properly punished for his crimes. App. at 157 ("I tried to impress upon you that the crimes which you pled guilty here to are not minor crimes. What you have sown you are now reaping.").

It is patently clear in this case that in deciding upon a consecutive sentence, the district court considered the nature and circumstances of the offense, the history and characteristic of the offender, and the need for punishment and incapacitation. The statute which authorizes the imposition of concurrent or consecutive sentences specifically requires courts to consider these factors. 18 U.S.C. § 3584(b) ("The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)."). United States v. Nottingham, 898 F.2d 390, 393 (3d Cir. 1990). Section 3553(a) provides in pertinent part that:

> . . . The court in determining the particular sentence to be imposed, shall consider --
>
>     (1) the nature of the circumstances of the offense and the history and characteristics of the defendant;

17

                (2)  the need for the sentence
        imposed --

                (A)  to reflect the seriousness of
        the offense, to promote respect for the law,
        and to provide just punishment for the
        offense;

                (B)  to afford adequate deterrence
        to criminal conduct;

                (C)  to protect the public from
        further crimes of the defendant . . .

18 U.S.C. § 3553(a).  See also Lagatta, 50 F.3d at 128.  These

factors are also reflected in the legislative history of U.S.S.G.

5G1.3's enabling statute, 28 U.S.C. § 994(a)(D) which states:

        in evaluating whether the sentences should
        run concurrently or consecutively, the court
        must consider the nature and circumstances of
        the offenses and the history and
        characteristics of the offense, the need for
        just punishment, deterrence, incapacitation,
        and rehabilitation, and the sentencing
        guidelines and any pertinent policy
        statements of the Sentencing Commission.  It
        is anticipated that in certain activities a
        purpose of incapacitation alone might warrant
        imposition of consecutive terms of
        imprisonment . . . .

S. Rep. No. 98-225, 98th Cong., 2d Sess. 128 (1984), reprinted in

1984 U.S.C.C.A.N. 3182, 3311.  In examining the nature of Spiers'

conduct, his history, the need for just punishment and

incapacitation, the court considered factors that it was required

to consider by law, and concluded that given the nature of his

conduct Spiers did not deserve a concurrent sentence, and that a

consecutive sentence would best serve the interests of justice.

The district court's reasons for declining to impose the

commentary's suggested penalty, therefore, are sufficient.

                              18

As the district court concluded in this case, a concurrent sentence would result in no incremental punishment at all, and would in effect give Spiers a "free ride" for his federal crimes. As Spiers' state sentence was approximately thirty-five years longer than the penalty suggested by the commentary, unless the district court dramatically departed upward, the imposition of a concurrent sentence would not have added any incremental punishment for Spiers' federal offenses. As the Ninth Circuit stated, "the imposition of a sentence which added no increment for [a defendant's] federal offenses could not be called the addition of a reasonable increment. Indeed, to say that a reasonable increment was zero would defy common sense and common usage. It would amount to the reification of an oxymoron." Redman, 35 F.3d at 442. See also Lagatta, 50 F.3d at 128 ("A concurrent sentence would serve none of these objectives, because it would have, in the words of the district court, given [the defendant] a `free ride.'"). As Spiers' does not challenge any of the district court's factual conclusions, we must conclude that the court acted within it discretion when it sentenced Spiers to serve a consecutive sentence of 110 months. As the commentary itself recognizes, courts may generally achieve an appropriate sentence through a determination of an appropriate point within the applicable guideline range for the federal offense at issue, and a determination of whether that sentence will run concurrently or consecutively to the undischarged term of imprisonment. See U.S.S.G. § 5G1.3 (commentary).

B.

19

Spiers' final argument is that the district court failed to make any determination as to exactly when his federal sentence would commence or what the court deemed the appropriate total sentence to be. (Appellant's Br. at 19). In other words, Spiers argues that the district court's sentence was impermissibly indeterminate. This argument ignores two simple facts. First, the district court determined exactly when Spiers' federal sentence would begin -- at the conclusion of his state sentence. Second, the court also determined what the appropriate total sentence was -- a consecutive sentence of 110 months. Accordingly, Spiers knows both when his federal sentence will begin and how long it will last. Inasmuch as Spiers does not dispute the district court's determination that a sentence of 110 months falls within the proper range for his federal bank robbery offenses, his argument is reduced to a reiteration that the district court should have imposed a concurrent sentence, as becomes clear upon examination of how Spiers concludes that his federal sentence is impermissibly indeterminate.

Spiers' argues that because his state sentence is indeterminate, the district court's sentence amounts to 257 months at the earliest or 417 months at the latest. According to Spiers, both of these results are inappropriate because they exceed the commentary's suggested punishment. (Appellant's Br. at 22). This argument ignores the district court's rejection of the commentary's suggested punishment. The commentary's suggested penalty is not a *per se* limit on the total amount of time Spiers may serve for his federal and state convictions. It

20

is only a suggested penalty which the district court is free to reject. Having rejected the commentary's suggested penalty, the district court retained the discretion to impose either a concurrent or consecutive sentence up to the maximum sentence for Spiers' federal convictions, in this case 121 months. As discussed above, the district court's decision to reject the suggested penalty was within the sound exercise of its discretion. Spiers' state sentence and federal sentence are therefore separate and independent penalties which cannot be aggregated. His federal sentence, therefore, will not fluctuate in length from 257 months to 417 months depending upon the length of his state sentence. The federal sentence will remain a constant 110 months. The only uncertainty, the exact date at which that 110-month period will begin, is a variable beyond the district court's control.

Moreover, the case law Spiers relies upon simply does not apply in situations where the district court has departed from the commentary's suggested methodology. In support of his indeterminacy argument, Spiers' cites <u>United States v. Brewer</u>, 23 F.3d 1317 (8th Cir. 1994), and <u>United States v. Yates</u>, 58 F.3d 542 (10th Cir. 1995). Neither case supports the argument that Spiers' sentence was impermissible. In both <u>Brewer</u> and <u>Yates</u>, the district courts adopted the Sentencing Guidelines' suggested punishments and then went on to establish estimates for completion of the state sentence without adequate evidence to show when those dates might be. Because the court had adopted the suggested Guidelines' punishment, the aggregate duration of

21

the combined state and federal sentences was vital.  Without sufficient evidence as to the likely length of the state sentences, the sentences imposed by the district courts failed to guaranty that the defendants would receive a reasonable incremental punishment.  Thus, in both Brewer and Yates, the circuit courts vacated the sentences and remanded the cases for resentencing.

In this case, however, because the district court rejected the commentary's suggested penalty and instead determined that the reasonable incremental punishment for Spiers' federal crimes was a wholly consecutive sentence of 110 months, the indeterminate nature of Spiers' state sentence will in no way affect and has no bearing on the duration of his federal sentence.  There is no need, therefore, for the district court to have made a finding of the likely length of Spiers' Arkansas state sentence.

Finally, Spiers' argument that the uncertainty of the exact day that his federal sentence will begin renders the sentence infirm simply proves too much.  The actual date upon which practically any consecutive sentences will take effect is uncertain.  By definition, a consecutive sentence begins when the prior sentence is completed.  There are many factors, including the defendant's behavior during incarceration, the decisions of a parole board, the possibility of an executive pardon or a successful appeal, and even prison conditions, which might determine when a defendant will complete his or her sentence.  Because these factors are all beyond a sentencing court's

22

control, the sentencing court will never know and can never determine with any degree of certainty the exact date a defendant will complete any given sentence.  We know of no principle of law that requires a court to attempt such an exercise in futility; nor do we know of any principles that render a consecutive sentencing void or unjust based upon the resulting indeterminacy.  As long as the defendant has adequate notice that a consecutive sentence may be imposed, a failure to determine the exact calendar date upon which a consecutive sentence is to begin does not deny the defendant due process of law.  Cf. Burns v. United States, 501 U.S. 129 (1991) (holding that a district court must notify the parties that it intends to upwardly depart from the sentencing range established by the Sentencing Guidelines); Lankford v. Idaho, 500 U.S. 110 (1991) (holding that a defendant must have notice that the trial court might sentence him to death).  As the district court's decision to impose a wholly consecutive sentence was within the sound exercise of its discretion, the limited uncertainty created by the term of the underlying state sentence does not render the consecutive federal sentence infirm.

IV.

For the forgoing reasons, the district court's order sentencing Spiers to 110 months to be served upon the completion of his undischarged state sentence will be affirmed.

_____