**UNITED STATES of America,**

v.

**Eric L. SWAN, Appellant.**

**No. 01–1598.**

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 2001.

Jan. 2, 2002.

---

Karen S. Gerlach, [Argued], Office of Federal Public Defender, Pittsburgh, PA, Counsel for Appellant Eric L. Swan.

Bonnie R. Schlueter, James H. Love, [Argued], Office of United States Attorney, PA, Counsel for Appellee United States of America.

Before: SCIRICA, RENDELL, and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Defendant, Eric Lish Swan, appeals his sentence for an offense committed while on supervised release. The District Court believed that the Sentencing Guidelines mandated that it be served consecutively to the previously imposed sentence for violation of supervised release. The main issue on appeal is whether § 5G1.3(c) of the Sentencing Guidelines and the accompanying Application Note 6 required the District Court to impose a consecutive sentence in these circumstances. This issue is the subject of a split in the courts of appeals and is one of first impression in our court. For the reasons described below, we agree with the apparent minority of courts holding that the language of Application Note 6 is not mandatory and, accordingly, will vacate the judgment of sentence and remand for resentencing.

### I.

In April 2000, the Pittsburgh Housing Authority Police responded to a call reporting a suspicious gathering. When they arrived, they saw Swan walk quickly toward a car, holding onto his pocket. After Swan jumped into the car, one of the officers saw him pull a holster containing a gun from his waistband and place it under the seat of the car. The police stopped the car and arrested Swan.App. at 76–78.

It was soon discovered that Swan had been convicted in 1992 of carrying a firearm during a drug trafficking crime and of two drug counts. He was on supervised release from this 1992 conviction at the time he was arrested.

The United States District Court for the Western District of Pennsylvania held a

hearing in May 2000 to consider the supervised release violation, and revoked Swan's supervised release because he had violated the conditions that he participate in residential drug treatment and that he not commit a crime or possess a firearm. Swan was sentenced to a term of 21 months. App. at 50.

While serving this term, Swan was indicted and eventually pled guilty to the charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), also in the Western District of Pennsylvania before the same judge. App. at 64, 65–81. Prior to sentencing, Swan's counsel filed a motion urging that Swan's sentence for the felon in possession offense should run concurrently or partially concurrently with the sentence Swan was already serving. App. at 85. At issue was the meaning of Application Note 6 to § 5G1.3(c) of the Sentencing Guidelines ("U.S.S.G." or "guidelines"), which provides:

> If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole, or supervised release.

U.S.S.G. § 5G1.3(c), Application Note 6 (2000).

After ordering briefing on this issue, the District Court concluded that "[i]n the absence of binding precedent, ... Application Note 6 [of § 5G1.3] requires the court to impose a consecutive sentence in this case." App. at 14. The Court then imposed a sentence of 65 months to run consecutively to the defendant's 21–month sentence. App. at 171. Swan filed a timely appeal from the sentencing order.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1)-(2). Although decisions to impose a particular concurrent or consecutive sentence are reviewed for abuse of discretion, because this appeal concerns the construction of Sentencing Guidelines, our review is plenary. *See, e.g., United States v. Spiers,* 82 F.3d 1274, 1277 (3d Cir.1996).

Section 5G1.3 addresses the sentencing of a defendant subject to an undischarged term of imprisonment. It provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.[1]

---

**1.** We apply the 2000 edition of the Sentencing Guidelines, as this version was in effect at the time Swan was sentenced and its application

The parties agree that (a) is inapplicable, but Swan argues that (b) applies, mandating a concurrent sentence, or, in the alternative, that (c) applies and gives the district court discretion to impose a concurrent or partially concurrent sentence.

## A. Section 5G1.3(b)

In order to discuss the import, and impact, of § 5G1.3(b), it is helpful to review Swan's offenses once more. His initial conviction, as noted above, was for carrying a firearm in connection with drug trafficking, and two drug counts. We could term this a "gun-drug" crime. While on supervised release resulting from this crime, he failed to seek drug treatment and committed a crime or possessed a gun, and his supervised release was revoked. This conduct we can classify as "failure of drug treatment/crime or gun possession" conduct. Then, the instant sentencing was for the crime of being a felon in possession of a firearm—his "felon in possession" charge.

The question under § 5G1.3(b) is whether the undischarged term of imprisonment (namely, the 21 months imposed because of his revocation of supervised release) "resulted from offenses" that have been "fully taken into account in the determina-

tion of the offense level for the instant offense." U.S.S.G. § 5G1.3(b).

Looking at the last element first, we ask what was "taken into account" in the determination of Swan's offense level for his sentencing as a felon in possession of a firearm. The District Court determined that the base offense level was 20, pursuant to the guideline for defendants sentenced for being a felon in possession of a firearm. *See* U.S.S.G. § 2K2.1(a)(4). A 2–point enhancement for a stolen gun and a 3–point decrease for acceptance of responsibility resulted in an offense level of 19. Can we say that Swan's 21–month sentence resulted from an offense that was fully taken into account in the determination of that offense level of 19?

We note that there is a difference of opinion as to whether the concept of "resulted from the offense" is intended to look back to the initial offense (here, the gun/drug crime but for which there would have been no supervised release or revocation thereof), or whether the "offense" referred to is the conduct that had the immediate impact of his release revocation and therefore the imposition of the term of imprisonment (in this case, the failure of drug treatment/crime or gun possession conduct).[2]

does not violate the *ex post facto* clause. *See* U.S.S.G. § 1B1.11.

Section 5G1.3 was effective in 1987 and was amended in 1989, 1991, 1992, 1993, and 1995. The language of Application Note 6 was first introduced as Note 4 in 1993. The two notes are essentially identical—Note 6 substitutes "to run" for "to be served" and "*See* § 7B1.3 (Revocation of Probation or Supervised Release) (setting forth a policy that any imprisonment penalty imposed for violating probation or supervised release should be consecutive to any sentence of imprisonment being served or subsequently imposed)" for the 1993 version's "(in accord with the policy expressed in §§ 7B1.3 and 7B1.4)."

2. The parties assumed that the more immediate offense, namely the supervised release violation, was the relevant offense, while the District Court considered the initial offense, pointing out that we have no clear directive on this issue in this circuit and relying on *United States v. Garcia–Hernandez*, 237 F.3d 105 (2d Cir.2000). App. at 8–11. We note that, in the context of an earlier version of § 5G1.3, we looked to the initial offense: "[O]ur law is that if an offense is committed while a defendant is on parole, that offense is compared to the offense for which the defendant is on parole rather than to the acts constituting a violation of parole for purposes of 'the same transactions or occurrences' clause in guideline § 5G1.3." *United States v. Chasmer*, 952 F.2d 50, 52 (3d Cir.1991) (cit-

██ We need not decide which is the proper reading, however, because we conclude that neither of these offenses was "fully taken into account" in the court's determination of the offense level of 19. While the Guidelines do not define this phrase, the drafters' inclusion of the word "fully" and the provision's purpose of avoiding double-counting indicate that more than just some effect on the offense level is required. *See, e.g., Witte v. United States,* 515 U.S. 389, 404–06, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (§ 5G1.3's purpose is to avoid double counting); *United States v. Dorsey,* 166 F.3d 558, 562 (3d Cir.1999) (same). Section 5G1.3(b) appears to be aimed at the situation in which, unless the sentences were concurrent, the defendant would be serving two sentences for essentially the identical offense.

While there is arguably some overlap, clearly, the offense level of 19 for the felon in possession charge did not "fully" take into account either the original offense conduct or the supervised release violation. Here, criminal conduct and prohibited conduct that occurred in connection with the initial offense and the supervised release revocation is not being considered at all in connection with the felon in possession charge. The scheme of § 5G1.3 seems to contemplate (b) as the "double-counting" section and subsection (c) as the section more appropriate if there is no precise

double-counting, but perhaps some overlap, as is the case here.

## B. Section 5G1.3(c) and Application Note 6

██ As neither (a) nor (b) applies, Swan's situation is addressed by § 5G1.3(c) and by the accompanying Application Note 6. The application note provides that, for a defendant like Swan who was on supervised release at the time of the instant offense and whose supervised release was revoked, "the sentence for the instant offense *should* be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release *in order to provide an incremental penalty* for the violation of probation, parole, or supervised release." U.S.S.G. § 5G1.3(c), Application Note 6 (2000) (emphasis added). We will first review the jurisprudential landscape of opinions that have considered the meaning of this note and that animate our ruling.

### 1. Reasoning of Other Courts of Appeals

The courts of appeals are divided as to whether § 5G1.3(c) and Application Note 6 mandate a consecutive sentence in these circumstances. The Courts of Appeals for the First, Fifth, Eighth, and Ninth Circuits have held that a consecutive sentence is mandatory, while those for the Second and Tenth have held that it is not.[3] The

ing *United States v. Nottingham,* 898 F.2d 390, 393 (3d Cir.1990), limited on other grounds, *United States v. Higgins,* 128 F.3d 138, 141 (3d Cir.1997)). If we were to analyze the issue, we would certainly consider the fact that the guideline language in both *Nottingham* and *Chasmer* was very different from the current language. At the time, § 5G1.3 provided for consecutive sentences when defendant was serving an unexpired sentence "unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences."

U.S.S.G. § 5G1.3 (1988). The commentary stated that the presumption that sentences imposed at different times run consecutively "does not apply when the new counts arise out of the same transaction or occurrence as a prior conviction." U.S.S.G. § 5G1.3, commentary (1988). The focus, thus, was on "prior conviction," not on what offenses the imprisonment "resulted" from. However, as we note, we do not need to rule on this question here.

**3.** *Compare United States v. Goldman,* 228 F.3d 942, 944 (8th Cir.2000) (holding that Applica-

Court of Appeals for the Seventh Circuit has not decided the issue, but has suggested in dicta that there is a "strong presumption" for consecutive sentences in these circumstances. *United States v. Walker*, 98 F.3d 944, 945 (7th Cir.1996).

The decisions on each side of the issue begin from different premises. The courts of appeals that found the language to be permissive interpreted "should" as non-mandatory and gave weight to the drafters' choice of the word. They then examined other parts of the guidelines and found no clear manifestations of a contrary intent on the part of the Sentencing Commission. In *United States v. Maria*, 186 F.3d 65, 70 (2d Cir.1999), the Court of Appeals for the Second Circuit began with "should," which it considered to be the "critical language." It reasoned that the common meaning of "should" "suggests or recommends a course of action." *Id.* It then analyzed the broad discretion given by a related guideline provision, namely § 5G1.3(c), together with § 7B1.3's "recommendation" that sentences be consecutive and with the use of the word "incremental" in Application Note 6, and concluded that nothing in the statutory scheme or history of the guidelines indicated that "should" was mandatory. *Id.* at 71–72. In *United States v. Tisdale*, 248 F.3d 964 (10th Cir.2001), the Court of Appeals for the Tenth Circuit found *Maria* persuasive and reached the

same conclusion for essentially the same reasons.

In contrast, the courts of appeals that have read Application Note 6 as mandating consecutive sentences started from the premise that the choice of "should" has little weight (even while acknowledging that it ordinarily has a permissive meaning). They then looked for other indicators that might help determine whether the section was permissive or mandatory. In the most exhaustive opinion on the issue, the Court of Appeals for the First Circuit asserted that "[s]ome might ... attach weight to the note's use of the word 'should,' rather than 'shall,' ... but these shadings in guideline language do not appear to be very reliable guides." *United States v. Gondek*, 65 F.3d 1, 2–3 (1st Cir.1995). Reasoning that the phrase "in order to provide an incremental penalty" indicated the Commission's decision that a fully consecutive sentence *is* the appropriate incremental penalty in these circumstances, that Application Note 6 treats essentially the same situation as that addressed by subsection (a), and that § 7B1.3(f) expresses a policy favoring consecutive sentences, the court concluded that the "greater weight of the evidence" supported a reading of the application note as mandatory. *Id.* at 3. The Courts of Appeals for the Eighth and Fifth Circuits underwent a similar analysis.[4] *See*

tion Note 6's language is mandatory), *cert. denied*, 531 U.S. 1175, 121 S.Ct. 1149, 148 L.Ed.2d 1011 (2001), *United States v. Alexander*, 100 F.3d 24, 26–27 (5th Cir.1996) (same), *United States v. Gondek*, 65 F.3d 1, 2–3 (1st Cir.1995) (same), *and United States v. Bernard*, 48 F.3d 427, 430–32 (9th Cir.1995) (same), *with United States v. Tisdale*, 248 F.3d 964, 976–80 (10th Cir.2001) (holding that Application Note 6 is not mandatory), *and United States v. Maria*, 186 F.3d 65, 70–73 (2d Cir.1999) (same). In the version of the guidelines at issue in *Bernard* and *Gondek*, the

language of current Application Note 6 appeared in Note 4.

The government includes *United States v. Flowers*, 13 F.3d 395, 397 (11th Cir.1994), in its list of cases that found the language mandatory, but *Flowers* is of limited use as it considered the Sentencing Guidelines in effect in March 1993, before the relevant application note was inserted.

4. In *Bernard*, the Court of Appeals for the Ninth Circuit focused on whether application of the 1993 guidelines to the defendant violated the *ex post facto* clause, assuming without

*United States v. Goldman,* 228 F.3d 942, 944 (8th Cir.2000); *United States v. Alexander,* 100 F.3d 24, 27 (5th Cir.1996).

For the reasons explained below, we agree with the courts holding that the language of the application note is permissive.[5] We have examined the same factors that the majority of courts of appeals found convincing, but we are persuaded that they point to a different result. In reaching this decision, we use basic tools of statutory interpretation, looking to the language of Application Note 6, the relationship between this language and § 5G1.3 as a whole, and the broader context of the guidelines, specifically § 7B1.3, which Application Note 6 references. *Cf. Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *United States v. Wong,* 3 F.3d 667, 670–71 (3d Cir.1993) (applying principles of statutory construction to sentencing guidelines). Our conclusion is also based on our prior decisions in this area, which reflect a preference for recognizing the district court's discretion when the statutory language permits.

**2. The Language of Application Note 6**

■ We begin with "the plain and unambiguous language of the Sentencing Guidelines" as it "affords the best recourse for their proper interpretation." *United States v. Philiposian,* 267 F.3d 214, 218 (3d Cir.2001) (quoting *United States v. Wong,* 3 F.3d 667, 670 (3d Cir.1993)) (internal quotation marks omitted). General-

ly, although "should" is "used to express duty or obligation," "shall" is stronger in that it expresses "[a] directive or requirement." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1078, 1070–71 (1988). In the legal context, "should ... ordinarily impl[ies] duty or obligation; although usually no more than an obligation of propriety or expediency, or a moral obligation," while shall "[a]s used in statutes, contracts, or the like ... is generally imperative or mandatory" and is "inconsistent with a concept of discretion." BLACK'S LAW DICTIONARY 1379, 1375 (6th ed.1990); *see also United States v. Tisdale,* 248 F.3d 964, 977 (10th Cir.2001); *United States v. Maria,* 186 F.3d 65, 70 (2d Cir.1999).

■ The courts of appeals that have ruled in favor of a mandatory reading reason that the application note is mandatory "notwithstanding" its use of "should." *United States v. Alexander,* 100 F.3d 24, 27 (5th Cir.1996); *United States v. Goldman,* 228 F.3d 942, 944 (8th Cir.2000). We find their decision to give little weight to the Commission's choice of words to be questionable in light of the basic principles of statutory interpretation that require us to be guided by the enacting authority's choice of words. *See, e.g., United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ("If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.)'" (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)); *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (same).

---

discussion that the relevant application note was mandatory. *See Bernard,* 48 F.3d at 431.

**5.** For the purposes of this opinion, we need not decide whether § 5G1.3(c) and Applica-

tion Note 6 are binding as we decide that they are not mandatory. *See Maria,* 186 F.3d at 69 n. 4.

Moreover, the Sentencing Commission is certainly capable of using language that is clearly mandatory. It has, in fact, done so in the text of § 5G1.3(a) and (b), where it used "shall" to mandate consecutive and concurrent sentences in certain circumstances. *See Maria,* 186 F.3d at 73. For these reasons, we must give some weight to the drafters' choice of the word "should."

■ That the term "should" is non-mandatory here is bolstered by the rest of the language of Application Note 6. The note specifically states that the sentence should be imposed to run consecutively "in order to provide an incremental penalty." If "should" were mandatory, then this phrase would be superfluous. We are reluctant to embrace a reading that has this result since, generally, statutes should be read to give effect to every clause. *See, e.g., Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001) (quoting *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) and *Babbitt v. Sweet Home Chapter, Communities for Great Ore.,* 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995)); *United States v. Higgins,* 128 F.3d 138, 142 (3d Cir.1997).

In response to this conundrum, several courts of appeals have reasoned that the drafters were simply indicating that in such a circumstance the appropriate incremental penalty was a fully consecutive sentence, thus equating the two. *Alexander,* 100 F.3d at 27; *United States v. Gondek,* 65 F.3d 1, 3 (1st Cir.1995). In contrast, we read the phrase "in order to provide an incremental penalty" as an invitation to the district court to use its discretion to fash-

ion a sentence that runs consecutively to the extent necessary to provide an incremental penalty. This seems to be a more natural reading, particularly given its "fit" with the concept of an "incremental penalty."

■ We understand "incremental penalty" as something additional, but not necessarily equivalent to a fully consecutive sentence.[6] This interpretation is supported in part by looking to how the guidelines have used the similar phrase, "incremental punishment." Chapter 3, Part D, which treats multiple counts, states that its purpose is "to provide incremental punishment for significant additional criminal conduct," the amount of which "declines as the number of additional offenses increases." U.S.S.G. Ch. 3, Pt. D, intro. comment; *United States v. MacLeod,* 80 F.3d 860, 868 (3d Cir.1996) (citing U.S.S.G. Ch. 3, Pt. D for the principle of "declining marginal punishment"); *see also Maria,* 186 F.3d at 72 (citing Ch. 3 to define "incremental"). With this understanding, there is a range of possible increments and, clearly, determining the size or extent of the increment requires an exercise of discretion. In other words, the application note contemplates some exercise of discretion by, and subjective judgment of, the sentencing court in fashioning an "increment" appropriate in the particular situation. In fact, this seems to parallel the very subsection to which the Note appends—(c)—in its use of the language "to achieve a reasonable punishment" to denote the exercise of discretion by the district court in fashioning an appropriate sentence. If consecutive sentences were mandatory, the exercise of discretion and directive as to "incremental

---

**6.** We need not, and do not, embrace Swan's argument that an "incremental penalty" means a "moderate additional penalty" in order to understand it as something additional. App. at 24; *see also Maria,* 186 F.3d at 72 (interpreting "incremental" as "modest"). Nothing in the statute, legislative history, or Swan's arguments lends support to the concept that "moderate" should be read into the statutory language.

penalty" would have no place and would be surplusage. Surely, that cannot be a preferred result.

### 3. The Structure of § 5G1.3

We also find the drafters' placement of Application Note 6 as a note to § 5G1.3(c) to bear on its meaning. Subsection (c) specifically allows concurrent, partially concurrent, or consecutive sentences. While it is not unusual for a guideline to give general discretion while a related application note imposes limits on that discretion, as the Courts of Appeals for the First and Fifth Circuits suggest, *see United States v. Alexander*, 100 F.3d 24, 27 (5th Cir.1996); *United States v. Gondek*, 65 F.3d 1, 3 (1st Cir.1995), the guideline scheme here undercuts that view. This is because *another* guideline subsection— § 5G1.3(a)—already contains this limitation, mandating consecutive sentences in specific situations.

Several courts that read Application Note 6 as mandating totally consecutive sentences reason that an offense committed while a defendant is actually serving an undischarged term of imprisonment is essentially the same as one committed while serving a term of imprisonment, as is described in (a), and, thus, deserves consecutive sentencing. *See United States v. Goldman*, 228 F.3d 942, 944 (8th Cir. 2000); *Alexander*, 100 F.3d at 27; *Gondek*, 65 F.3d at 3. But the drafters must not have read Application Note 6 as these courts do, or they would have included that concept in (a) or in a note to (a). Application Note 6 clearly falls under, and pertains to, the discussion of § 5G1.3(c). That section speaks of a concurrent or consecutive, or partially concurrent or con-

secutive, sentencing scheme. Had the guideline drafters intended to mandate that the two sentences are to run fully consecutively, Application Note 6 is misplaced; its essence should have been stated in § 5G1.3(a) itself, or in a note to that section.

### 4. The Relationship Between § 5G1.3 and § 7B1.3

Having examined the language of the application note and its relationship to the guideline's main text, we turn to the interaction of this section with the rest of the guidelines. Because Application Note 6 cross-references § 7B1.3,[7] that section serves as another guidepost.

Section 7B1.3, like the chapter in which it appears, addresses revocation of probation or supervised release. It provides in pertinent part that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving." U.S.S.G. § 7B1.3(f). This subsection is accompanied by Application Note 4:

> Similarly [to subsection (f) ], it is the Commission's *recommendation* that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment imposed upon revocation.

U.S.S.G. § 7B1.3(f), Application Note 4 (emphasis added).

■ Courts that have found consecutive sentences mandatory have pointed to the policy of § 7B1.3(f) in support of their conclusion. *See, e.g., United States v.*

---

7. U.S.S.G. § 5G1.3, Application Note 6 ("*See* § 7B1.3 (Revocation of Probation or Supervised Release) (setting forth a policy that any imprisonment penalty imposed for violating

probation or supervised release should be consecutive to any sentence of imprisonment being served or subsequently imposed)").

*Gondek,* 65 F.3d 1, 3 (1st Cir.1995) (stating that the policy expressed in § 7B1.3(f) "reinforces" its view that consecutive sentences are mandatory). We read this provision as expressing a preference for consecutive sentences, but are not persuaded that this section counters our reading of Application Note 6 in the context of § 5G1.3(c). Interestingly, while the drafters used the word "shall" in the guideline, they neutralized its force with the Note that characterizes this as a "recommendation." U.S.S.G. § 7B1.3(f), Application Note 4. Moreover, not only does Application Note 6 to § 5G1.3(c) describe what § 7B1.3 does as "setting forth a policy," but also the guideline appears in Chapter 7, which is non-binding, *see* U.S.S.G. Ch. 7, Pt. A; *United States v. Schwegel,* 126 F.3d 551, 553 (3d Cir.1997); *United States v. Brady,* 88 F.3d 225, 229 n. 2 (3d Cir.1996). Like the Courts of Appeals for the Tenth and Second Circuits, we find this interpretation of § 7B1.3 persuasive. *See United States v. Tisdale,* 248 F.3d 964, 979 (10th Cir.2001); *United States v. Maria,* 186 F.3d 65, 71–72 (2d Cir.1999).

## 5. District Court Discretion

Our interpretation of Application Note 6 is also guided by the policies reflected in our decision in *United States v. Spiers,* 82 F.3d 1274 (3d Cir.1996), in which we interpreted a precursor to the current § 5G1.3(c) and application notes. The commentary to the guideline section provided that "[t]o the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed ... had all of the offenses been federal offenses for which sentences were being imposed at the same time." U.S.S.G. § 5G1.3(c), Application Note 3 (1994). Based on the use of "should" and of the qualifier "to the extent practicable" and the description of the methodology as a means "to assist the court," we determined that this language was permissive. *Id.* at 1277–78; *United States v. Holifield,* 53 F.3d 11, 16 (3d Cir.1995) (agreeing with the Court of Appeals for the Ninth Circuit that "should consider" falls somewhere between "may consider" and "shall impose").[8] Similarly, the current provision uses the term "should" in a context that supports its permissive meaning.

*Spiers* is instructive not only because it presents an analogous issue regarding interpretation, but also because in it we expressed our preference for giving the district court sentencing discretion.[9]

---

8. We were not alone; most of the courts of appeals reached the same conclusion. *See, e.g., United States v. Hernandez,* 64 F.3d 179, 183 (5th Cir.1995) ("[D]ue to the permissive language of the commentary, we have decided that the suggested methodology is advisory only.... If the district court chooses not to follow the methodology, it must explain why the calculated sentence would be impracticable in that case or the reasons for using an alternate method."); *United States v. Whiteley,* 54 F.3d 85, 89–90 (2d Cir.1995) (same); *United States v. Redman,* 35 F.3d 437, 441 (9th Cir.1994) (same). They differ now in holding that the new version lacks such qualifications or reservations. *Compare United States v. Alexander,* 100 F.3d 24, 27 (5th Cir.1996) (distinguishing *Hernandez*), *with United States v. Maria,* 186 F.3d 65, 71 (2d Cir.1999) (citing *Whiteley* in rejecting the government's argument that "should" means "shall" in the guidelines).

9. Appellant points to 18 U.S.C. § 3584 as stating this preference. *See* 18 U.S.C. § 3584 ("[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively...."). Reliance on this statute as support for the position that the District Court had discretion here is misplaced, however, in light of our decision in *United States v. Higgins,* 128 F.3d

Specifically, in *Spiers* we rejected the idea that we should read the guideline as mandatory and then permit the courts to exercise discretion in granting a departure. *Id.* at 1278–79 (rejecting *United States v. Duranseau,* 26 F.3d 804 (8th Cir.1994) and *United States v. Brewer,* 23 F.3d 1317 (8th Cir.1994)). Surely there will be cases where that is necessary and prescribed, but where the guideline language seems to give discretion in the first instance, we should recognize that discretion, consistent with *Spiers.*

■ Accordingly, we view Application Note 6 to indicate the Commission's strong preference for imposing a consecutive sentence to the extent necessary to provide an incremental penalty. We recognize that the application note uses "should" and not "may," and do not wish to erode the difference between the two. *Cf. Maria,* 186 F.3d at 71 (noting that the district court must consider this difference in determining the appropriate sentence). *Spiers* is instructive here too. There, we required district courts to undergo the required calculation, noting that they could exercise discretion not to impose the sentence thus calculated but should explain their reasoning with reference to the factors listed in § 3553(a). *Spiers,* 82 F.3d at 1280. No departure from the guidelines was necessary to achieve this result, only the exercise of discretion in keeping with the dictates of the statute. *Id.* The same approach is appropriate in this context. The district court must consider the guideline's preference, but should also exercise its discretion and be guided by its own view of what is needed in the way of an incremental penalty in the particular setting, mindful that its reasoning in that regard should be part of its sentencing determination.

## III.

For the foregoing reasons, we will VACATE the District Court's Judgment and Commitment Order and REMAND for resentencing in accordance with this opinion.

---

138 (3d Cir.1997). There we found no inherent conflict between § 3584's grant of discretion and "the limitation of that discretion in certain instances by the Guidelines," specifically by § 5G3.1(a). *Id.* at 142. We reasoned that the guidelines clearly do not trump the statute but that the two must be read harmoniously where the text permits. *Id.* at 141–42. The same reasoning applies in connection with § 5G1.3(c).