**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 16-2734

UNITED STATES OF AMERICA

v.

THOMAS RAY,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-14-cr-0207-002)
District Judge:  Hon. Christopher C. Conner

Submitted Under Third Circuit L.A.R. 34.1(a)
March 14, 2017

Before:  GREENAWAY, JR., and SHWARTZ, Circuit Judges,
and SIMANDLE, Senior District Judge[*]

(Filed: August 25, 2017)

OPINION[**]

SIMANDLE, Senior District Judge.

---

[*] Hon Jerome B. Simandle, Senior U.S. District Judge for the District of New Jersey,
sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

## I.  INTRODUCTION

Appellant Thomas Ray seeks review of a sentence imposed following his plea of guilty to the offense of distribution of oxycodone within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(b)(1)(C) & 860(a).  The sentence was made partially concurrent and partially consecutive to an undischarged aggregate state term of imprisonment on seven separate charges, of which two were determined to relate to the present offense.  The District Court also granted the Government's motion for a downward departure for substantial assistance under U.S.S.G. § 5K1.1.

On appeal, Ray raises two grounds, alleging that the District Court abused its discretion when it limited the length of concurrency of the sentence, and that the determination of the extent of the downward departure under § 5K1.1 was procedurally deficient and an abuse of discretion.

This Court has jurisdiction to review the sentence as to concurrency pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), but we lack jurisdiction to review the extent of downward departure for substantial assistance, as explained below.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Investigation revealed that Ray was a patient of Dr. John Terry, who was then a medical doctor in Wellsboro, Pennsylvania.  Ray admitted that Dr. Terry would prescribe drugs to him -- primarily oxycodone -- that were not medically necessary.  Ray admitted that he illegally sold every pill he was provided, earning an estimated $200,000 from distributing approximately 10,109 oxycodone tablets.  PSR ¶¶ 5-8.  The total quantity of

2

oxycodone involved in this offense was 321.97 grams, which converted to 2,157.20 kilograms of marijuana for purposes of the Sentencing Guidelines, U.S.S.G. § 2D1.1, which yielded a base offense level of 31 pursuant to U.S.S.G. § 2D1.2(a)(2). PSR ¶ 14. With an adjustment of three points for acceptance of responsibility, U.S.S.G. § 3E1.1(a) & (b), the Total Offense Level was 28 and Ray's Criminal History Category was IV. PSR ¶¶ 21-22, 36. The recommended Guideline Range was thus 110-137 months, which is undisputed on appeal.

Meanwhile, Ray was serving an undischarged aggregate term of imprisonment for seven state convictions in Tioga County, Pennsylvania, some of which also concerned Ray's relationship with Dr. Terry, see PSR ¶¶ 28-34, which combined to a state sentence of 51-180 months. These included:

1) Tioga County Court case **33-2013**, Possession with Intent to Deliver a Controlled Substance.
   This case arose out of one of the 2012 controlled buys discussed above, and resulted in a sentence of 16-60 months to be served concurrently with Tioga County Court case 305-2014. PSR ¶ 28.

2) Tioga County Court case **305-2014**, Possession with Intent to Deliver Oxycodone.
   This case arose out of a 2014 controlled buy conducted by state investigators. It resulted in a sentence of 21-60 months. PSR ¶ 29.

3) Tioga County Court case **322-2014**, Theft by Unlawful Taking.
   This case arose out of Ray's theft of $30,000 and other items from Dr. Terry's residence. It resulted in a sentence of 16-60 months to be served concurrent with Tioga County Court case 305-2014. PSR ¶ 30.

4) Tioga County Court case **321-2014**, Burglary.
   This case arose out of Ray's theft of $300,000 from a safe contained in one of Dr. Terry's vehicles. It resulted in a sentence of 14-60 months to be served consecutively to Tioga County Court case 305-2014. PSR ¶ 31.

3

5) Tioga County Court case **401-2014**, Criminal Solicitation - Burglary.
This case arose out of Ray's conspiring to commit a burglary of Dr. Terry's home with an undercover operative. It resulted in a sentence of 16-60 months to be served consecutively to Tioga County Court cases 305-2014 & 321 - 2014. PSR ¶ 32.

6 ) Tioga County Court case **402-2014**, Bad Checks.
This case arose out of Ray's writing of $1,000 worth of checks drawing on a closed account. It resulted in a sentence of 9-60 months to be served concurrently with Tioga County Court case 401-2014. PSR ¶ 33.

7) Tioga County Court case **459-2014**, Bad Checks.
This case arose out of Ray's writing of over $2,000 worth of checks drawing on "unlocated" or closed accounts. It resulted in a sentence of 9-60 months to be served concurrently with Tioga County Court case 321-2014. PSR ¶ 34.

Of these seven Tioga County convictions, the Presentence Investigation Report classified only two as arising from conduct that was related to the instant federal offense (PSR ¶ 67), while five were deemed unrelated for concurrency purposes. The PSR deemed the first two convictions (at PSR ¶¶ 28-29) to be related, specifically the convictions for possession with intent to deliver oxycodone, such that of the aggregate sentence of 51 months, a total of 21 months was related to the federal charge. (PSR ¶ 67.) The PSR deemed the remaining five convictions aggregating 30 months (PSR ¶¶ 30-34) as unrelated to the present offense. In other words, according to the PSR, the three crimes in which Ray committed burglary of Dr. Terry's residence and theft from Dr. Terry's car (PSR ¶¶ 30-32), and the two convictions for writing bad checks (PSR ¶¶ 33-34), were deemed unrelated to Ray's federal conviction for Ray's distribution of oxycodone because they were not in the realm of relevant conduct under U.S.S.G. § 1B1.3.

4

At sentencing, the District Court agreed that only the two Tioga County charges for possession with intent to deliver should be considered related. The District Judge found a proper distinction to be drawn between Ray's federal crime of distribution and the burglary, theft, and check charges. (App. 23a, 26a.) The District Judge determined that 21 months' credit would be given by way of concurrency, since 21 months was the portion of the undischarged aggregate state sentence for the related convictions.

Further, the Court granted the Government's motion for a downward departure for substantial assistance under § 5K1.1 and awarded a two-level departure, considering and rejecting Ray's arguments for a greater departure. (App. 7a)

With the two-level departure for substantial assistance, the new advisory Guidelines Range, determined by a Total Offense Level of 26 and Criminal History Category of IV, was 92-115 months. Subtracting a 21-month adjustment (for the extent of concurrency of the related portion of the undischarged state sentence) from the bottom end of the range resulted in a sentence of 71 months to run concurrently with the sentences in Tioga County Cases 33-2013 and 305-2014, and consecutively to the sentences in Tioga County Cases 322-2014, 321-2014, 401-2014, 402-2014, and 459-2014. (Appellant's Br. and App., Judgment, p.2.)

This appeal timely followed.

5

## III. DISCUSSION

### A. Extent of Concurrency

Ray asserts that the District Court abused its discretion when it limited the length of concurrency to 21 months when it recognized only two of the seven state convictions as related to his federal conviction. Ray argues that the court erred in not recognizing other state convictions as sufficiently related to increase the period of concurrency. Ray acknowledges that the District Court adjusted his sentence to reflect the relatedness of 21 months of conduct (that is, distribution of prescription medication dispensed by Dr. Terry), but he argues that three other convictions, in PSR ¶¶ 30, 31, and 32, also involved relevant conduct to the federal offense pursuant to the policy statement at U.S.S.G. § 5G1.3(b). These three crimes, as noted, involved Ray stealing (or plotting to do so) from Dr. Terry by burglarizing his residence and stealing $300,000 cash from his vehicle, that is, crimes by Ray against Terry as his victim.

"[D]ecisions to impose a particular concurrent or consecutive sentence are reviewed for abuse of discretion." United States v. Swan, 275 F.3d 272, 275 (3d Cir. 2002). Whether a federal sentence is imposed to be served concurrently or consecutively is left to the discretion of the sentencing court. Setser v. United States, 566 U.S. 231, 236 (2012) (noting federal courts "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings."). Under 18 U.S.C. § 3584(a), the sentencing court may impose a concurrent or consecutive sentence.

6

United States v. Spiers, 82 F.3d 1274, 1277 (3d Cir. 1996).  Likewise, authority to impose a concurrent or consecutive sentence is recognized in the Sentencing Guidelines, U.S.S.G. § 5G1.3(b).  The sentence may be concurrent, partially concurrent, or consecutive in order to "achieve a reasonable punishment for the instant offense," U.S.S.G. § 5G1.3(d).

U.S.S.G. § 5G1.3(b) incorporates the provisions of § 1B1.3(a)(1)-(3) for the purposes of identifying relevant conduct for concurrency purposes.  Section 1B1.3(a)(1) applies to criminal acts undertaken by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  U.S.S.G. § 1B1.3(a)(1)(B).

Although not addressing the tests for relatedness under § 1B1.3(a)(1), Ray argues that the other three state convictions involving Dr. Terry as a victim were nonetheless related for concurrency consideration because Dr. Terry was the "common denominator," the theft and burglary offenses occurred during the same general time frame as the federal distribution charge, and in the same place -- Tioga County.  (Appellant's Br. at 10.)

The District Court determined that these other crimes were unrelated to the conduct in the federal crime of conviction.  It is apparent that the burglary and theft did not occur during the commission of the federal offense but instead afterwards, since Ray acknowledges these state crimes were a response to the fact that Dr. Terry had lost his license and Ray could not continue to get prescriptions from him (Appellant's Br. at 10).

That Ray victimized his former supplier does not equate to crimes "during" Ray's distribution of the controlled substances, nor in preparation for those sales, nor as part of an attempt to avoid responsibility for those sales.

Nor were the three disputed state crimes part of a "common scheme or plan" or same "course of conduct" to be considered relevant conduct under U.S.S.G. § 1B1.3(a)(2). The Tioga County burglary and theft had no common factor such as common accomplices, purposes, or modus operandi, see U.S.S.G. § 1B1.3(a)(2), App. Note 5(B). Certainly Dr. Terry's roles as drug supplier in the related crimes and as victim of Ray's burglary and theft in the unrelated ones, support the distinction. The agreement between Ray and Dr. Terry to possess and distribute oxycodone obviously could not have included agreement by Dr. Terry to be victimized in his home and vehicle by Ray.

It is also apparent that, under U.S.S.G. § 1B1.3(a)(3), the unrelated cases do not involve the same or similar harm as the instant case. Ray's seizure of property and currency from Dr. Terry in the unrelated Tioga County cases is hardly the same as the harm to others from distribution of oxycodone in the present case.

Thus, we hold that the District Court did not abuse its discretion in determining that its sentence would be concurrent only for the 21 months of the related Tioga County sentences that Ray was serving, and consecutive with regard to the other Tioga County sentences being served aggregating 30 months.

8

Ray's final argument -- that the District Court should have found a broader concurrency under U.S.S.G. § 5G1.3(d) -- also lacks merit. The District Court carefully parsed the state sentences that Ray was already serving. As noted, the policy statement in U.S.S.G. § 5G1.3(d) permits a court to impose a concurrent, partially concurrent, or consecutive sentence in any other case in which a defendant is subject to a prior undischarged term of imprisonment in order "to achieve a reasonable punishment for the instant offense." Section 5G1.3(d) is only permissive ("the sentence for the instant offense <u>may</u> be imposed. . .") (emphasis added), as the goal of § 5G1.3(d) is a sentence that amounts to a "reasonable punishment" for the instant offense. <u>Id.</u>

When applying § 5G1.3(d), the sentencing court has broad discretion. The underlying statute at 18 U.S.C. § 3584(b) identifies, in broadest terms, that "[t]he court in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b). While Ray argues that the sentencing court failed to sufficiently consider the § 3553(a) factors, the record indicates otherwise. The District Judge carefully indicated exactly how he was determining the sentence, namely, by considering each of the § 3553(a) factors and then adjusting the sentence downward by 21 months, crediting the state sentences on the two related distribution crimes. (App. 20a-24a.) The sentence that resulted, 92 months, was at the low end of the guideline range, and it was adjusted downward by 21 months, to a

sentence of 71 months consecutive to the state sentences being served on the five Tioga County crimes found to be unrelated. (App. 22A-23A.)

The sentencing court's explanation for the reasons of this sentence dealt with all relevant arguments and circumstances. More elaborate findings are not required. See United States v. Saintville, 218 F.3d 246, 249 (3d Cir. 2000) (no requirement for specific findings under § 5G1.3).

We hold the sentencing court did not abuse its discretion in determining the degree of concurrency of the instant sentence.

### B. Extent of § 5K1.1 Departure

Ray asserts that the District Court's decision to grant a downward departure of two levels upon the Government's motion pursuant to U.S.S.G. § 5K1.1 was "procedurally deficient and an abuse of discretion." Appellant's Br. at 13.

Ray argues that the circumstances of his case justified more than a "meager" departure of two levels for his cooperation. (Appellant's Br. at 15.) He argues that the two levels are insufficient to recognize the extent, significance, and value of his cooperation, citing such circumstances as its early timing, attendance at two proffers, its value in obtaining the search warrant for Dr. Terry's residence, and its promotion of the guilty pleas of the three remaining co-defendants. (Appellant's Br. at 14, citing App. 5a-7a, 41a-45a.)

The sentencing judge reviewed the Government's motion and explicitly applied the factors to be considered in determining the extent of departure in United States v.

10

Torres, 251 F.3d 138, 146-49 (3d Cir. 2001). The judge well understood the timing, nature, significance, and reliability of Ray's cooperation, reciting appropriate findings. (App. 3a-4a). After listening to further argument and counsel's request for a four-level departure, the court declined to grant a larger departure, finding that "the assistance actually is quite consistent with a two-level downward departure. And I have had cases that have been very similar in terms of the level of cooperation. And I believe that a two-level downward departure is appropriate. I don't believe that a four-level departure is appropriate." (App. 7a.)

Where, as here, the District Court considered the relevant circumstances of cooperation and was fully aware of its discretion to grant the motion for departure, this Court lacks jurisdiction to review the extent of a District Court's departure. United States v. Watson, 482 F.3d 269, 271 n.2 (3d Cir. 2007) ("We do not have jurisdiction to review a District Court's discretionary decision to deny a departure or appeals by defendants challenging the extent of a downward departure," citing United States v. Cooper, 437 F.3d 324, 332-33 (3d Cir. 2006)); see also United States v. King, 604 F.3d 125, 141 n.9 (3d Cir. 2010) (jurisdiction lacking to review denial of downward departure under § 5K1.1 unless sentencing court "was unaware of its discretion to grant the motion." (citation omitted)).

Ray argues that an exception to the jurisdictional bar permits review of the extent of a downward departure, such as in United States v. King, 53 F.3d 589 (3d Cir. 1995). In King, this Court reviewed the sentencing court's determination of a three-level

11

departure upon granting a § 5K1.1 motion, where the judge stated that it was always his practice to grant a three-level departure on § 5K1.1 motions. Id. at 590. The record lacked evidence of the individualized determination required for such departures and the sentencing judge substituted a personal across-the-board practice, causing the Court to remand for resentencing. Id. at 591-92. The present determination, on the other hand, contained individualized recitation and consideration of Ray's specific cooperation. The District Judge found Ray's cooperation was comparable to cases for which a two-level departure is appropriate, and he did not announce a personal across-the-board policy of a fixed departure for all cases. This again was an individualized determination comparing Ray's degree of cooperation with other similar cases. This is a reasonable way of seeking comparability in sentencing cooperators, consistent with the factor of avoiding undue disparity in sentencing under 18 U.S.C. § 3553(a)(6). Where this proper mode of analysis leads -- that is, the extent of downward departure -- is unreviewable by this Court.

## IV. Conclusion

For the foregoing reasons, we will dismiss the appeal in part and affirm the final judgment of conviction and sentence entered on May 26, 2016.